# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JASON DENNIS MORGAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. CIV-19-91-RAW-SPS |
| | ) |
| **COMMISSIONER of the Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Jason Dennis Morgan requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-three years old at the time of the most recent administrative hearing (Tr. 60). He completed twelfth grade and has previously worked as an ammunition assembly laborer II (Tr. 47, 204). The claimant alleges inability to work since his protected filing date of February 4, 2017, due to idiopathic osteoporosis, vitamin D deficiency, knee pain, GERD, multiple upper and lower limb fractures, and osteoarthritis (Tr. 203).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on April 4, 2017. His application was denied. ALJ J. Leland Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 2, 2018 (Tr. 38-51). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could only occasionally climb stairs/ramps, stoop, kneel, crouch, and crawl, and that he could never climb ladders/ropes/scaffolds. Additionally, the ALJ found that the claimant could avoid unprotected heights and moving machinery, and that he required the ability to sit and stand, defined as a brief positional change, for purposes of comfort, from sitting to

standing and vice versa with no more than one change in position every twenty minutes and without leaving the workstation so as not to diminish pace or production (Tr. 42). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, booth cashier, office helper, and electrical accessories assembler (Tr. 47-48).

## Review

The claimant contends that the ALJ erred by failing to properly account for his subjective complaints. As part of this argument, the claimant also contends that his subjective complaints are supported by the opinion of his orthopedic surgeon. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of osteoarthritis, idiopathic osteoporosis with a history of bone fractures, and a history of right and left hip fracture (Tr. 41). The relevant medical evidence reveals that the claimant was diagnosed with osteoporosis at least as far back as 2014, although his alleged onset date in this case is February 4, 2017. Comparative scans from April 2014 and August 2015 revealed a mild decrease in the spine and mild increase in the hip, noting that the claimant was not on bone building medications at the time, but he was taking Vitamin D and calcium. Because of the claimant's osteoporosis, Dr. Lee Alice Goscin wrote in December 2015 and June 2016 that the claimant ought to remain on light duty and he was extremely limited as to what he could do physically (Tr. 282, 285).

On February 4, 2017, the claimant was drinking heavily and fell off a porch, fracturing his right hip (Tr. 328). Orthopedic surgeon Dr. Patrick Gannon performed the claimant's surgery on February 5, 2017 and limited him to no prolonged walking, standing, sitting, squatting, or kneeling for the first three months after surgery (Tr. 339). However, on March 31, 2017, Dr. Gannon anticipated at least three to four more months before the claimant could return to prolonged walking and standing at work but said he could return to seated work at that time (Tr. 371). On May 12, 2017, Dr. Gannon wrote that the claimant had healed and he could return to light duty work, but that he could have no prolonged standing or sitting longer than thirty minutes (Tr. 379).

The claimant largely received primary care treatment from Dr. Susan Davis at Caring Hands Healthcare Center. Dr. Davis wrote on August 24, 2016, that the claimant was on restricted duty and would need frequent breaks to sit down when needed (Tr. 325-326). On August 9, 2017, Dr. Davis wrote a letter stating that she had treated the claimant since August 2016 and he has "fairly extensive osteoporosis," along with chronic pain and traumatic arthropathy from his fractures, and that these caused problems "in trying to hold down a full time job permanently" (Tr. 388). She had examined the claimant the day before, and treatment notes from that visit reflect that he was, *inter alia*, positive for joint pain, but negative for joint swelling and muscle weakness, and that he had mild to moderate pain with various range of motion exercises but a normal gait (Tr. 393-394).

State agency physician Dr. James Metcalf determined that the claimant could perform light work, but that he could only occasionally climb

ramps/stairs/ladders/ropes/scaffolds (Tr. 89-91). On reconsideration, Dr. Nabeel Uwaydah affirmed this decision in its entirety (Tr. 104-106).

At the administrative hearing, the claimant testified that he has osteoporosis, which resulted in him breaking a number of bones over the years, causing constant pain all over his body (Tr. 61, 64). He stated that his doctors told him they believe his osteoporosis will get better in time, but that he could not tell it has gotten better up to that time (Tr. 62). He explained that he lives by himself but that his mother and sister bring him food, his sister comes over to help him clean because getting up and around causes him pain, and a friend does his yardwork for him (Tr. 63, 66). He testified he could walk sixty to seventy yards before having to sit down due to pain in his legs, and that he could stand five or ten minutes at time (Tr. 64). He believed he could lift up to thirty pounds but that it would cause problems if he did for very long, and that he could not bend over because it caused pain in his hips (Tr. 65). He stated that his sleep is interrupted by pain because he has to change positions during the night (Tr. 65-66). In response to questioning from the ALJ the claimant testified that he had broken each of his legs at different times, describing incidents such as getting thrown off a horse, falling off his own porch, falling off his sister's porch, and getting kicked by a horse (Tr 67-70). He testified that he had four rods total in his legs, from various surgeries (Tr. 70). Finally, he stated that he would have difficulty with an office job because he needs to alternate sitting and standing due to pain (Tr. 72).

In his written opinion at step four, the ALJ thoroughly summarized the claimant's testimony as well as the medical evidence in the record. He found the claimant's statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr.

44). Specifically, he noted that the claimant had worked for over a year after his January 2014 surgery on his left hip, and that by March 2018, although he continued to complain of joint pain and myalgia, he nevertheless was observed to have four normal extremities and he was encouraged to exercise (Tr. 44). The ALJ further noted the claimant's two bone density scans, as well as the multiple medical source statements that the claimant was to remain on light duty work, which the ALJ found consistent with the claimant's subjective statements, as well as supported by his diagnoses and treatment notes (Tr. 44-45). He also noted that the remoteness in time of these statements from the alleged onset date was nevertheless supported by later opinions regarding the claimant's light work capabilities, and that light work would not put the claimant at risk of further bone breaks, given the previous injuries occurred while breaking horses and falling off a porch after heavy drinking (Tr. 45). The ALJ summarized the treatment notes following the claimant's 2017 injury, as well as the assessment that the claimant could return to work within two to four months with prolonged standing and walking (Tr. 45). The ALJ then noted Dr. Gannon's opinion several months later that the claimant had healed and that he should not engage in any prolonged standing and walking but that he could return to light duty work, and ultimately found his opinion persuasive (Tr. 45). The ALJ also noted Dr. Davis's assessments of the claimant to restricted duty requiring frequent breaks and the ability to sit down, noting that they were provided during a time the claimant continued to work and predated his hip injury in February 2017, but given his hip injury and osteoporosis the ALJ ultimately found her opinion to be supported and consistent with a finding that the claimant could perform light work (Tr. 46). He further noted her August 2017 letter, pointing out

that it failed to assess whether the claimant could work at all and finding it unsupported by the evidence if that was the inference (Tr. 46). He then found the state reviewing physician opinions persuasive as to the finding of light work, but that the claimant was further limited (Tr. 47). He ultimately determined that the claimant was not disabled.

The claimant contends that the ALJ erred in analyzing his subjective statements, asserting the ALJ improperly found Dr. Gannon's assessment consistent with light work when it was not, in light of the restriction of no prolonged standing or walking longer than thirty minutes. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the

symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The ALJ's written opinion is summarized above, and the undersigned Magistrate Judge notes that the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 44). In making such conclusion, the ALJ

---

factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

noted several inconsistencies between the claimant's subjective statements of pain and the evidence of record, including: (i) the claimant's work for over a year after at least one of his injuries that required surgery, (ii) the claimant's physicians encouraging him to exercise despite the continued presence of joint pain and myalgias, and (iii) repeated recommendations in the record limiting the claimant to light duty work. Thus, the ALJ linked his subjective statement analysis to the evidence and provided specific reasons for the determination. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation of the claimant's subjective statements is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

As part of his argument, the claimant contends that the ALJ failed to properly analyze Dr. Gannon's opinion as the claimant's orthopedic surgeon. The Court finds that the ALJ did not, however, commit any error in his analysis. As a treating physician, the ALJ was required to give Dr. Gannon's medical opinion controlling weight if his opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that Dr. Gannon's opinion was not entitled to controlling weight, he was nevertheless required to determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length

of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject Dr. Gannon's opinion entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's analysis of Dr. Gannon's opinion is set forth above. The Court finds that the ALJ considered his opinion in accordance with the appropriate standards and properly concluded it was persuasive. In fact, the ALJ noted and fully discussed the findings of all of the claimant's various treating, consultative, and reviewing physicians, including Dr. Gannon, whose opinion, the ALJ noted, found that the claimant still had some limitations with regard to walking, standing, and sitting even after the immediate three months following the February 2017 surgery. The ALJ thus did not commit error in failing to include any additional limitations imposed by Dr. Gannon in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight assigned this opinion, as well as

sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293(10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the undersigned Magistrate Judge simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is

-13-

therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

    **DATED** this 27th day of April, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**